**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| WANDA E. DAUMONT COLON<br>PLAINTIFF<br><br>VS.<br><br>COOPERATIVA DE AHORRO Y CREDITO DE CAGUAS;  IRMA  HILERIO  ARROYO  AS OFFICER   AND   IN   HER   PERSONAL CAPACITY<br><br>DEFENDANT | Civil No.: 15-3120 (GAG-CVR)<br><br><br>AGE  DISCRIMINATION  IN  EMPLOYMENT ACT  (ADEA),  Puerto  Rico  Law  100,  29 L.P.R.A., 146, Law 80, 29 L.P.R.A. § 185<br><br>Jury Trial Requested |

## ANSWER TO DEFENDANTS STATEMENT OF UNCONTESTED FACTS AND PLAINTIFF STATEMENT OF UNCONTESTED FACTS

**TO THE HONORABLE COURT**:

Comes  now  Plaintiff  through  the  undersigned  attorney  and  respectfully submits  its  Answer  to  Defendant's  Statement  of  Uncontested  Facts  in Opposition to Plaintiffs' motion For Summary Judgment and its Statement of Uncontested Facts.

1. SUF 1 is admitted that Plaintiff was 60 years old when she was discharged. She had 36 years of service for Caguas Coop at that time (Exh I Page 1 (1) (a); page 4 (e).

2. SUF 2 is admitted that Plaintiff held the position of Branch Manager in Caguas Coop with the duties described. She reported directly to the VP of Operations, Mr. Adorno (Exh XI).

3. SUF 3 is admitted that in the year 2012 co defendant Hilerio was hired at Caguas Coop.

4. SUF 4  is admitted that Plaintiff was discharged on March 10, 2015.

5. From USF 5 it is admitted that Plaintiff filled out a form requesting the withdrawal of $80.00 from her husband's account and a deposit slip to his checking account in the same amount. Plaintiff was the Branch Manager at all times. It is clarified that Mr. José Tirado had previously authorized plaintiff to sign in the account and to carry out transactions (Exh VII and XXVI) page 4 L 20-25; page 12 to 13).

6. USF 6 is admitted. It must be clarified that Mr. Tirado had been **a member** and client of Caguas Coop., for over thirty (30) years and his accounts (several) were at said branch. (Exh XXVI, page 4 L 20 to page 5 L 8).

7. USF 7 is admitted.

8. USF 8 is denied as stated. The transaction was **not of** Ms. Daumont, it was of her husband. It is admitted that she did not request Ms. Joany Torres to authorized the transaction this was the duty of the teller/cashier. Plaintiff gave the slips to Mr. Norberto Santos **instructing him** to obtain Ms. Torres approval prior to making the transaction (Exh I, page 2 (b) to page 3 (c) and Mr. Santos' Statement (Exh IV, deposition (XXVII) (Exh V Job Description).

9. USF 9 is admitted. It is clarified that Plaintiff had instructed the teller to obtain the supervisor's approval prior to making the transaction. This was admitted by Mr. Santos (Exh IV depo XXVII, page 18 L 1 to Page 19 L 4 Page 20 L 18 – 15-25).

10. USF 10 is admitted but qualified. Plaintiff gave direct and clear instructions to Mr. Santos to obtain the authorization, he so admitted during his deposition (Exh XXVII) (supra)

11.  SUF 11 is admitted but qualified; she was authorized to do so by her husband Mr. José Tirado (Exh VII) (Exh. XXVI).

12. SUF 12 is admitted.

13. SUF 13 is denied as stated, **as authorized by Mr. Tirado** she wrote his name on the slip (Exh VII and XXVII). Plaintiff "wrote" Mr. Tirados name in the slip. Defendants had previously accepted Mr. Tirado's withdrawals even without any name or signature (Exh XIX) (request for credit line withdraw processed without his signature).

14. SUF 14 is admitted, in part, the claim that Plaintiff "never went with Tirado to Caguas Coop, **to modify** said line of credit" is qualified. There was never a modification of the line of credit. Plaintiff and Tirado **did visit** the Caguas Coop **to include**. Plaintiff as an authorized person to conduct transactions in his accounts (Exh XXVI). Santos' Dep. Page 28 L 24 to page 31 L 22. (Exh X (a) page 23 L 2 to 24 L 18).

15. SUF 15 is admitted; Plaintiff was never a co-debtor in said line of credit account but was authorized to carry out transactions on behalf of Mr. Tirado (Exh X (a) (Page 23-24, VII and XXVI) Page 5 L 1-25; Page 8 L 10-14).

16. SUF 16 is denied, it is not supported by the record. On the contrary, Mr. Tirado informed Defendant Caguas Coop that Plaintiff was authorized to carry out transactions in his accounts (Exh VII) (XXVI) (supra).

17. SUF 17 is admitted in part. It is denied that Tirado's authorizations were "after the February 20th, 2015 transaction". Mr. Tirado and Plaintiff Daumont explained that said authorizations were given to the Defendant Caguas Coop **years before**, but since Defendant had charged its electronic system they went **to update** said authorizations (Exh X (a) page 2 L 1 to 18)

18. SUF 18 is admitted, it is clarified that these documents were **to update information** previously provided **(**Exh X (a) (supra).

19. From SUF 19 is admitted, that, that was Matos' testimony.

20. From SUF 20 is admitted, that, that was Matos' testimony.

21. From SUF 21 is admitted

22. From SUF 22 is admitted

23. SUF 23 is denied and contested. Plaintiff needed no authorization. <u>The teller</u> who carries out the transaction is the one in charge of obtaining the teller's supervisor's approval prior to making the transaction (Exh. V, Exh. XIII (Page 59 L 20-25).

24. SUF 24 is admitted

25. SUF 25 is denied. There was no "forgery" in this case. Plaintiff was authorized by her husband to carry out any transaction and this was known to Caguas Coop, there was no intent to defraud anyone, these transactions were previously approved by Defendants. (Exh V) (Exh10 (a), page 5-9 and XXVII, page 13 L 1-8; page 14 L 1 to 25).

26. SUF 26 is admitted, and qualified. Plaintiff's actions were in compliance with Defendant's rules and past practice (Exh XXVII) Co-defendant Hilerio was expected to set an example of fairness and honesty (see Caguas Coop disciplinary procedures (Exh XXII) (supra).

27. SUF 27 is denied. When Mr. Tirado initially authorized his wife to do transactions on his behalf, for his benefit, Defendant Caguas Coop did not request its clients to fill any document. The procedure was to visit the Branch and provide the information to the officer who entered the information in the Visuals System. Under this process Plaintiff requested services for her husband for many years. At one point in time Defendant changed its computer System (Visuals for Helvita) and some of information in the Visuales System was not transferred to the New System  (Testimony of Mr. Santos Exh XXVII, page 28 L 24 to page 29 L 15), Co-

defendant Hilerio Exh XI (a) page 56 L 23 to  page 57 L 11). There is no evidence that Defendant ever requested Mr. Tirado to fill any document. As to the line of credit, any person authorized by the owner of the account could carry out a transaction (Exh XI (a) page 49 L 16 to 25 (the members number was also the account number). In this case Mr. Tirado had authorized his wife to do so (Exh VII and XXVI pag5 lines 17 to 25).

28. From SUF 28 it is admitted that, that is what Ms. Rodriguez testified. However, there can be no "forgery" if the action of "signing" is authorized by the owner of the account and there is no intent to defraud anyone, it was a withdrawal and a deposit to Mr. Tirado's account. Defendants rules fail to explain what "forgery" (a legal criminal term) is. Plaintiff in over 36 years of work was never explained that conducting a transaction on behalf of her husband, authorized by him, for his benefit was considered a "forgery" by Defendant. These transaction were always approved by Defendants Officials (Exh 10 (a) and XXVII Norberto Santos Dep. P. 13 line 1-8 p 15 line  1-8 p line 20-25)

29. SUF 29 is denied, it is not supported by the record. Whatever Matos told Adorno is irrelevant. More important, it is represented to the court that Matos "conducted an investigation" and "she had concluded". This is contested, Matos only reviewed Mr. Tirado's file. (Exh XIII P 54 line 22-55)  (86 line 15-25) (p 87 line19-25). Matos only provided document requested. Plaintiff Daumont was not interviewed, Mr. Tirado was not interviewed, Mr. Martinez was not interviewed, and Ms. Ayala was not interviewed, (Mr. Matos dep  Exh XII P 68, line 1-12; Ms Rodriguez dep Exh, XIV P 45 line 5 to p 46 line 23) Mr. Santos was interviewed, and  informed Defendants that **it was him** who made the transaction and that **he failed to**

**follow Plaintiff's instructions** to obtain the supervisors' approval. (Plaintiffs Deposition Exh 10 (a) supra Santo's statement (Exh IV).

30. SUF 30 is admitted

31. SUF 31 is denied, it is contested by Mr. Tirado's testimony (Exh VII and Exh XXVI page 5 l 17 to 25), Plaintiffs testimony (Exh X (a), and Mato's depo (Exh XIII) "Daumont was authorized" (p 67 line 7-16)

32. SUF 32 is denied. Mr. Tirado authorized his wife thru the Visuals System not the Helvita System. (See Exh X (a) supra, XI,  XIII supra and  XXVI (screen print).

33.  SUF 33 is denied, it is not supported by the citation. It is admitted that the transaction was not approved by the supervisor, that the teller Mr. Santos was interviewed and that he informed Defendants that **it was his error** (Exh IV and XXVII) supra. There was no investigation, defendant failed to interview the persons involved, Mr. Tirado and Plaintiff. (Exh XI (a), Exh XV, P 34 line 9-21; Exh XV; XIII; XIV). The transaction was not approved by a supervisor because the teller forgot to do it. (Exh IV) (Exh XXVII).

34. From SUF 34 it is admitted that the "signature" in the transaction slip was not of Mr. Tirado. Mr. Adorno testified that co-defendant Hilerio "ordered a "deeper investigation," however no document has been produced regarding said "deeper investigation nor was Mr. Tirado ever interviewed as part of that "investigation".

(Exh XI) (Exh XIV) Ms. Matos research showed that Plaintiff **was in fact authorized** in the System XIII P 67 LINE 7-16). The investigation provided Defendants exculpatory evidence by testimony of Mr. Santos, by (Exh XVI) (screen print) and by the information collected /obtained by Ms. Matos and others.

35. SUF 35 is denied, Mr. Santos testified that Plaintiff **instructed him** to obtain the supervisor's approval, but because she was not in the area, and there were a lot of customers, **he forgot**. (Exh IV, XXVII)

36. SUF 36 is denied, it is not supported by the citation, the term "pattern" is not explained nor have documents supporting said conclusion been provided. **All** prior transactions by Plaintiff on behalf her husband were approved by a supervisor. (Exh XIX, Exh XI page 93 L9 to 14)

37. SUF 37 is denied, as stated. Plaintiff testified that she had requested transactions on behalf of her husband and they were always approved by an officer of the Defendant. (Exh X (b), P 6, line 7 to P 9  line 6) (Exh XXVII) (Exh XIX).

38. SUF 38 is denied. Plaintiff **did not herself approve** those transactions, she prepared the documents and another officer of the Defendant approved them before the teller proceeded with the transaction. (Exh X (a) p 80 line 6, line18-25,p 81 line1-20).

39. SUF 39 is denied as stated. Plaintiff was never interviewed by Co defendant Hilerio regarding the transactions mentioned in 37   above. All of them were approved by a Supervisor. (Exh X (b)  p 6 line 7 to p 9 line 6).

40. SUF 40 is denied for ambiguity and lack of support , nothing was wrong with Mr. Tirado's transactions of Feb 20, 2015. These transactions were approved by Tirado (Exh VII) and carried out by Mr. Santos (Exh IV), not Plaintiff.

41. From SUF 41 it is admitted that Defendants claim that Danmart Development transaction was another reason to terminate Plaintiff's employment. Any wrong doing is contested (Exh VIII Ayala's depo and IV Mr. Martinez depo p 8 line 1 to p 10 line 22) (Exh 10 (b), p 80 line 69 to p 81 line 20).

42. SUF 42 is admitted

43. SUF 43 is admitted, Ms. Maria Ayala is the wife of Mr. Damian Martinez.

44. SUF 44 admitted.

45. SUF 45 is admitted

46. SUF 46 is denied, it is not supported by the record. The record does not supported the statement. Mr. Martinez was President and the owner of the corporation.  (Exh IX) and his wife was the Vice President (Exh VIII).

47. SUF 47 is denied as stated, if is admitted that no corporate resolution was done by Danmart; none was required. Defendants' have failed to provided rules and regulations that requires one. The only resolution required was for taking **a loan** under the corporation's name (Exh XI (b) p 8 line 12 to 23;  p 9 line 3 p 10 line 1) Exh IX p line 13-24) (Exh XI (a) p 115 line 21 to 116 line 9).

48. SUF 48 is denied, as stated. Mr. Martinez as President and sole owner of Danmart authorized **in writing** his wife the Vice President to carry out the transaction. (Exh VII and XVII ) (Hand writing note)

49. SUF 49 is admitted

50. SUF 50 is denied as stated, the reference to the record does not support the proposed fact. The "investigation" failed to interviewed Mr. Martinez, Ms. Ayala and Plaintiff. (Mato's depo Exh XIII p 68 line 1-24;  p 81 line 1-15 ) (Exh XIII Rodriguez depo p 36 line 3-11 p 38 line 14-24)

51. SUF 51 is repetitive of SUF 47, Defendant has failed to provide any rule or regulation requiring so supporting of its claim. (Exh XI (b) p 9 line 3 to p 10 line 1)

52. SUF 52 is denied, it is admitted that Mr. Adorno testified so, however this is contested by Mr. Martinez testimony to the effect that **he was present** at the Branch when the transaction was carried out by his wife's testimony and by

Plaintiff's testimony to the same effect (Exh VIII, Exh IX, X, (b) p 57 line 1-25) Therefore it is contested.

53. SUF 53 is denied, this is an unsupported legal argument. The fact that the Danmart transaction "**could be a violation** of the regulations" is speculative and is not supported by any document. Mr. Martinez had authorized his wife, not withstanding **he was present** in the Branch when the transaction was completed and **personally** received the checks. (Exh VIII; IX and X (b) (p 57 line 1-25).

54. SUF 54 is denied, It is admitted that Hilerio send the mentioned letter, however its content is contested by Plaintiff's response letter explaining that the transaction was approved by other Credit Union Official, not her (Exh XXVIII response letter). This was not a disciplinary action as testified by Co defendant Hilerio (Exh XI  p 127 line 2-24 and XIV p 75 line 1 to 23)

55. SUF 55 is denied as stated, the transaction was approved by Mr. Adorno, Defendants' Official. (Exh XXVIII)

56. SUF 56 is denied, Plaintiff only admitted that, that was the content of the letter, not that it was correct. The regulations only required that someone else approved the transaction, among others the cashier's Supervisor and the VP of operations.(Exh X, (a) p 41 line 15 to p 42 line 24 and Exh XXVIII).

57. SUF 57 is denied as stated, Plaintiff only admitted receiving the letter and replying to it. (Exh XXVIII) During her deposition plaintiff denied the truth of the content of the letter (Exh X (a) p 41 to p 42 line 24). This was a remote act, over two years before of the discharge. Co Defendant Hilario (Exh XI (a) p 127 line 2-24) stated that **reprimand letters were not disciplinary** measures, only coaching.

58. SUF 58 is denied as stated, is not supported by the record. Hilerio "reminded" Plaintiff of the procedures and Plaintiff answered with a detailed explanation on

how the procedures were followed. (Exh XXVIII). As to defendant's reply to Plaintiff's answer, there was nothing else that Plaintiff could explain. This was not a disciplinary action (Exh XI (a) p 127, line 2-24; Exh XIII).

59. SUF 59 is denied and contested. The "investigation" failed to interviewed the main actors: Mr. Tirado, Ms. Ayala and Mr. Martinez. (Exh VII; VIII, XXVI)

60. SUF 60 is admitted as to the fact that Co-defendant Hilerio decided to terminate Plaintiff Employment.

61. SUF 61 is denied. Co-defendant Hilerio testimony is self serving. She testified that she did not discriminate against Plaintiff "because of her age because she (Hilerio) was older" (Hilerio's depo XI (a) (b) p 16 line 2-3). As a matter of law being older is not a defense for discrimination. Defendants admitted that younger employees received no disciplinary actions or just a suspension for serious violations (Exh XI (a) (p 125 line 1 to p 126 line 25) (Exh XIV depo Rodriguez P 71 line 1 to p 73 line 9)

62. SUF 62 is admitted, Plaintiff was 60 years when discharged.

63. SUF 63 does not require an admission. The content of the letter is contested. (Exh I, X (a) ) (Exh IV; V; VII; VIII; IX; XVI; XVII)

64. SUF 64 is denied, the termination letter makes those charges, however the fact that Plaintiff incurred in any violation is contested. Plaintiff did not "forged or altered reports or documents". Any document prepared by Plaintiff on behalf of her husband was previously authorized by him ( Exh VII, and XXVI)

Plaintiff did not approved or processed any transaction, the two transactions mentioned in the letter were carried out by other Credit Union's Officials (Exh X, (a) supra, Exh IV)

The code of conduct provides for termination upon first offense for serious violations; however Younger employees were not terminated. Mr. Santos admitted that **he carried out the transactions** dealing with Mr. Tirado and that he failed to obtain his supervisor's approval. Mr. Santos was only reprimanded (Exh XXVII and VI) other employees received a different and more lenient treatment (Exh X (a), Exh XI (a),  (Exh XIV, p 71 line to p 75 line 23)

65. SUF 65 is denied; Defendant had some general rules which were not enforced as written. Even though Mr. Santos admitted not following those rules he was only reprimanded (Exh VI). There were complaints against Ms. Torres for violating Defendants rules and no disciplinary action was taken (Exh XXVII). See Ms Hilerio testimony as to other employees (Exh XI (a) p 125 line 1 to p 129 line 15 and (Exh X (a) p 40 to p 49 line 25) . Therefore, is contested whether or not the cited rules and regulations "**were in place"**.

As to the "Manual de "Servicio al Cliente" it is contested whether a Corporate resolution was needed for Danmart Transactions. The rule states "Corporate Resolution: (A) It shall be require, of a corporation that **has a Board of Directors**,…An agreement **of the member** authorizing the person **who appear** to the Credit Union to perform transactions and sign them".

There is no evidence to support that Danmart **had** a Board of Directors. Mr. Martinez was the President and sole owner of the Corporation. Defendants were required to produce evidence of the corporate resolution of Danmart and they only produce a resolution **to take a loan**. (Exh XI (b). Finally co-Defendant Hilario admitted that no such Resolution was necessary (Exh XI (a) p 115 to 116 line 9).

66. SUF 66 is denied. Ms Hilerio did testify that Plaintiff's alleged violation was "a trust factor". This is contested with the more serious violations by younger employees who received no discipline; Mr. Santos admitted violations **did not** raise in her a "trust factor" (Exh IV, VI).  Nor Ms.' Caez violations raised such trust factor (Exh XX). See, also Rodriguez depo, Exh  XIV ( p 71 to p 75 line 23).

67. From SUF 67 it is admitted that the termination letter mentions those alleged violations. However said claims are contested. (See supra, Exh I, X, (a); IV, XXVI; XXVII).

> **"a)** To carry out transactions … outside the norms… in favor of …"

 This is contested. Plaintiff   did not **carry out** any transaction "outside of the norms". As to Mr. Tirado's transaction, withdrawing $80.00 from his line of credit and depositing the same in his checking account (in fact a transfer of money between his accounts),   the evidence is that Plaintiff gave instructions to Mr. Santos (teller) to obtain the approval of the supervisor (Exh IV and XXVII). He failed to do so and made the transaction. He admitted this to the Defendants who gave him a reprimand letter. (Exh VI) As to Danmart President's transaction, the same was approved by Mr. Martinez (Exh VII and IX) and Plaintiff tooked the documents to Mr. Lozada who approved the same (Exh X (a) p 41 line 15 to p 42 line 4). Mr. Martinez was present during the transaction (Exh IX).

> **"b)** To violate o instigate others to violate established operating methods…"

Plaintiff instructed Mr. Santos to obtain the approval of the supervisor which **he did not".**  He admitted this. (Exh IV and XXVII). Defendants have failed to point out to any other employee. This claim is not supported by the record.

**"c)** To offer false information in any application or document in which any right… is created … or give false information **intentionally on any credit application …"**

This claim is not supported by the record. Defendants have failed to produce said documents. Clearly the rule refers to applications **for the benefit of the employee**, which **grants** her any **right** or through which she obtained any credit. There is no evidence to support these claims. Nor have defendants identified which information was "false".

**"d)** To cause a subordinate employee to fail to comply with the conflict of interest policy of the Credit Union".

Defendants have failed to include any evidence supporting this charge with its Motion For Summary Judgment. There is no evidence of any subordinate failure to comply "**with the conflict of interest policy**". This claim is unsupported.

**"e)** To induce the Credit Union <u>to error</u> by indicating that she was authorized signature in Tirado's line of Credit".

This is contested. Mr. Tirado testified that he had granted such authorization in all his accounts (Exh VII and XXVI p 5 L 1-25; p 8 L 10-14) plaintiff so testified (X)(a). Ms. Hilerio admitted this (Exh XI (a) (p 98 line 18-23) and other witness corroborated this (Mr. Santos Exh XXVII; Ms. Damaris Jimenez (Exh XXV p 27 L 16 to p 28 L 25; p 32 L 1 to 16; p 49 L 1-9).

In fact, for many years Plaintiff had carried out transactions on behalf of her husband, always approved by Defendant's officers (Exh X) (Exh XIX. See also testimony of Mr. Santos (Exh XXVII). Defendants have failed to explain and sustain the "error" to which "**it** was induced". Mr. Tirado never complained and has always paid his line of credit.

**"f) Forging** the signature of her husband"

This is contested; Mr. Tirado had authorized and requested Plaintiff to fill out the documents on his behalf and for his benefit. See, (Exh VII and XXVI) This was known by Defendants' officers supra (e); See, (Exh XIII)  (Exh XV)  (Exh XXIV and XXV) above.

> **g)** "Having signed seven (7) line of Credit withdrawals (in Mr. Tirado's line of Credit) <u>since July 10, 2014.</u> Against the norms of conduct …"

It is admitted that Plaintiff would fill out forms at the request of her husband and for his benefit. These transactions were **approved by Defendant's officers**. **In Compliance** with Defendant's Norms.  (See Exh X(a) p 2 L 1 to 18; p 5 to 9), XIX and XXVII p 13 to 14). Exhibit XIX is copy of those slips, they were approved by Defendant's Officers. There are even some slips without any signature… and were approved.

The fact that **since** at least year **2014 these transactions were approved** by Defendant's officer's shows that the similar transaction carried out on February 2015 was usual and common, as was testified by Mr. Santos (Exh XXVII p 13 to 14). Never before **had** defendants raised an issue with such transactions.

 Defendants claim that said action was a **"violation against honesty"** but have failed to show "dishonesty," failing to produce any document, testimony or evidence of any loss resulting from Plaintiff's actions. As per Defendants Rules and Regulations **it was the Board of Directors who had to determine if there was a conflict of interest or a breach of honesty**. (Exh XXII).

The two transactions included in the termination letter were proper; in one Plaintiff instructed Mr. Santos to obtain the approval of the supervisor what he later failed to do (Exh IV) this caused no problem or loss to defendants.

In the second, the Danmart line of credit withdrawal, it was approved by Supervisor Lozada and carried out by a teller. Mr. Martinez had made a written

authorization (Exh XVII) and later **was present** at the Branch to pick up the checks personally. (Exh XVII; VII and VIII). There was no complaint from the client or any loss for the Defendant.

## PAINTIFF' S UNCONTESTED FACTS

1. The cashier is the person in charge of receiving and verifying checks and other valuable documents at Defendant  is Credit Union.

   (Job Description Exh.V) (Part 1 (b).

2. **In case of a doubt** about the identity of the client, limits, or any other doubt as to the legitimacy of the transaction, **the cashier must obtain the supervisor's approval.** (Job description Exh V part 1(b)).

3. The cashier's Supervisor must supervise and review the **daily** work of the cashier. (Exh V) part 2 (d).

4. The cashier's Supervisor must solve all complex matters that may arise.

   (Exh V) (2 - g)

5. The cashier's Supervisor must admonish verbally or in writing an employee in case of any discrepancy or fault in the cashier's performance or conduct. (Exh V) (2 k) In this case the cashier's Supervisor failed to carry out this duty, it was months after the incident that the Co-Defendant Hilerio gave a reprimand letter to the cashier. (Exh VI)

6. Plaintiff was discharged after 36 years of service, at age 60, on March 24, 2015, for alleged acts that occurred months before (on January 30, 2015 and February 20, 2015). (Exh I p 2 (1a) to p. 3 (c) X, and XII ) termination letter).

7. Plaintiff was replaced by Elizabeth Rivera of 30 years of age. (Exh X, XI ).

8. The majority of Defendants employees were younger than Plaintiff. Of 40 employees 35 were below 50 years of age and 23, out of 40, were **under** age 40. (Answer to the Complaint, p 5 par. 30 docket 8).

9. The cashier who carried out the transaction on February 20th 2015 (a **transfer** from, the client's line of credit to the client's checking account) was Mr. Norberto Santos. (Exh IV)

10. Mr. Norberto Santos worked for Caguas Coop for 3 years and eleven months as a teller (Exh XXVII) (p. 7 line 20 – 25) He also acted as a Supervisor (p. 9 line 1 – 3). He Worked for Caguas Coop until April 2016 (p. 9 line 1 – 3)

11. Mr. Norberto Santos stated under penalty of perjury that Plaintiff instructed him **to obtain** the approval from the cashier's Supervisor or the Vice President (Exh IV par. 4) (Exh XXVII) .

Ms. Daumont prepared the document and gave it to Mr. Santos, telling him to obtain the signature of the authorized person (supervisor) (Exh XXVII p. 9 line 23 to p. 10 line).

**"I did the transaction as was done at other times**. I do the transaction and as I unusually done them, when I see my Supervisor… I put it here and I keep on working" (Exh XXVII ) (p 20 line 18-25) (p 37 line 1-7).

12. Mr. Santos explained that on February 20th 2015 he did not obtain the approval because there was a crowd of people and the Supervisor was not in the area**, and "the practice was** to carry out the transaction and to obtain the Supervisor's signature later". (Exh XXVII p. 18 line 16 – 25).

13. Mr. Santos admitted that he did not have prior authorization to carry out Mr. Tirado's transaction (Exh XXVII p. 19 line 2 – 4).

14. Mr. Santos failed to obtain his supervisor's approval and went ahead with the withdrawal deposit "because this was a normal and rutinary transaction: (Exh XXVII, pag. 5). He did not seek authorization because the Supervisor was not there, she was not in the teller's area (Exh XXVII p35 line 16 -24, p 36, line 1 – 15).

15. Mr. Santos did not inform Plaintiff of what had happened. He kept the documents to obtain the approval of the Vice President later in the day, but he forgot. ( Exh XXVII pag. 6 - 7).

16. Over a month later, on March 10, 2015, Mr. Santos **was interviewed** by Co-defendant Hilerio regarding the withdrawal of $80.00 from Mr. José Tirado's credit line and a deposit in the same amount to Mr. Tirado's checking account. Mr. Santos explained that Ms. Daumont (Plaintiff) had instructed him to obtain the prior approval. Mr. Santos explained to Co Defendant what had happened. (Exh XXVII p. 8 – 9).

17. Prior to this meeting, a month after the transaction, no one had interviewed Mr. Santos regarding said event. (Exh XXVII p. 12).

18. Mr. Santos had complained against Ms. Joany Torres, his Supervisor, because "she was, during working hours, always texting on the cell phone". He complained to the Human Resources Director, Ms Lourdes Rodriguez . Who responded that said conduct was against the rules, that Ms. Joany had been given a sanction regarding that same problem that she was going to **meet with her again**. (Exh XXVII p. 27 line 10 – 25).

19. Mr. Santos, who admitted making Mr. Tirados' transaction, was given a reprimand letter for failing to obtain the Supervisors approval (Exh XXVII p. 18 line 1 – 25) (Exh VI).

20. Defendant Hilerio discharged Plaintiff after interviewing Mr. Santos, alledging that, "when you gave instructions to one of you subordinates to carry out a transaction without the authorized approval required you breached the code of conduct. (Exh XII, 2nd par).

Plaintiff was also charged with "falsifying" her husband's signature since **the years 2014** in seven (7) occasions" (Exh XII, page 2, 1st par.)

21. On June 26, 2014 Defendants granted Plaintiff a merit salary increase for her excellent performance. (Exh III).

Plaintiff received good performance evolutions for years 2012, 2013 y 2014 and there was no mention ever of any disciplinary problem. (Exh II).

22. Ms. Elizabeth Rivera was appointed by Co Defendant Hilario, to Plaintiff's position. The position was not posted; other employees were not given the opportunity to be considered. Ms. Elizabeth Rivera was 30 years old and with less experience that Plaintiff. (Exh I, p 2 X and XI).

23. Of the two alleged transactions used to terminate Plaintiff's employment, **none caused** any damages to the Defendant. None caused the lost of any money. Co-Defendant Hilerio's Depositions of July 26, 2017 (Exh XI p.14 line 1– 8). Defendant Credit Union suffered no harm by Plaintiff's alledged actions. (Exh XI p. 15 line 12 – 17).

24. There was no complaint against the Defendant or Plaintiff from any client, member or customer Co-Defendant depo. (Exh XI p. 15 line 1 -11).

25. Co-Defendant Hilario testified that the reason for the discharge "was a trust factor". (Exh XI (p. 14 line 19).

26. Defendants' Board of Directors did not participate in the evaluation of the charges against Plaintiff. Ms. Hilerio was the one that decided to terminate Plaintiff. (Exh XI p 121 line 11-14 and XII).

27. Defendant's norms and procedures provide that, in cases of conflict interest, The Board of Directors **would decide** the matter (Exh XXII). **"The Board of Directors will evaluate and decide** if the financial interest of the employee… or "related party", **in a matter under the consideration** of the Institution **is or not significant** or if it affects or not the integrity of the duties that the employee carries out at the Credit Union". (Code of Ethics, Nov. 29, 2012) (Part C (5) (Exh XXI).

28. Defendant Hilario stated that "never can age be (a factor) because I am older than her"(Exh VI, p. 16 line 1 – 3).

29. At the Credit Union there was a System called "Visuales" where the name of authorized persons to sign in an account appeared. Said System was changed for the Helvita program and some information **was not transferred**. (Exh Co-Defendant Hilerio, p 49 line 4 to p 59 line 25 XI, and XXV p. 30 line 22 to p. 31 line 1 p 39; p 41; p 44; p 49). Mr. Benjamin Torres, (Depo. Exh XXIV p.37 1-14).

30. Defendant had a System called "Visuales" that changed to "Helvita. A lot of the information that was in the "Visuales" program did not go to the Helvita's program. However, Ms Doumont was already authorized by Mr. Tirado in the "Visuales" Program.  (Exh XXIV  p 37 line 1 to 14 and XXV p. 23 line 2 to p. 24 line 18 p 29; p 39; p 41;p 44; p 49).

31. Before the new Helvita program the member of the Credit Union would go to the branch to inform the persons he authorized to conduct transactions

in his account. No documents were written, the clerk would only enter the information in to the system. (Exh XXV p. 27 line 5 to 25 -29 line 11 – 25) (Exh XI p 49 to 59)

32. On February 25, 2015 Mr. Tirado and Plaintiff went to Defendants Branch and filled out a request to authorized Plaintiff to handle transactions in Tirado's accounts, **this was an update of the prior authorization. (**Exh X, (a) p 23 line14 to p 24 line 18 XXVI). (Exh XXV p 27 L 16 to p 28 L 25).

33. Ms. Daumont received a warning letter on June 27, 2012 from co-Defendant Hilerio for "cashing a check" of her daughter. Plaintiff explained that the check was from AEELA (Public Employees Association) and that Mr. José Lozada **approved the check** and instructed the cashier to cash it. (Exh X p. 41 line 15 – 25 and p. 54 line 4). Mr. Lozada was the teller's supervisor at that time. ( Exh. X(a) p. 42 line 16 to 24).

34. Reprimand letters are not considered disciplinary actions. (Exh XI (a), p 127 L 2 to 24) (p 128 L11-14; p 129 L 14-15).

35. Plaintiff obtained the supervisor's approval, Mr. Lozada, for the cashing of the AEELA check, after that she placed her initials in the check in case anything went wrong with the check. (Exh. X(a) p. 55 line 10 – 24). Plaintiff placed her initials for that reason, not as an approval of the check. Exh X (a), p. 55 line 20 to pag. 56 line 11).

36. Plaintiff responded co Defendants letter on June 7, 2012 denying any wrong doing in writing (Exh XXVIII).

37. Prior to February 2015, Plaintiff had filled out several transactions on behalf of her husband Mr. Tirado. All those transactions were approved by the teller's Supervisor, Mr. Lozada (Exh X (a) p. 5 to p 9) (Exh XIX).

38. Defendant's Code of conduct and Progressive Discipline, Part VII, establishes that,

> "The purpose of the disciplinary measures is **not to punish**, but to correct or to modify the conduct, **except** in those cases in which **are inevitabl**e the job separation. With this policy the Credit Union intends to administer **in just and equitable way** the rules to attend the improper conduct in the work environment… (Exh XXII) (p 46).

39. The Employee Manual (Exh XXIII) provides in part as follows: "with these policies The Credit Union pretends to administer the disciplinary rules in a **just and equitable** way … (2nd par).

" with the purpose to assure that **all our employees** receive a **just treatment** the Credit Union has created **uniform and impartial** disciplinary measures…" (3er par).

"Progressive discipline means those actions which are taken in an order, and that are enforced as the behavior increases to unacceptable conduct … (Exh XXIII page 46).

If more than twelve (12) months go by since the last admonishment this process could be reinitiated (a new), except that a reiterated pattern of conduct is proven …

40. It is not the intent of the Credit Union to terminate the employment of its employees through these rules, but to correct the behavior of the employees that breach these rules of conduct. The **employment termination is the last option** to be considered in this process.(Exh XXIII p. 46) (7th par)

**Disparate Treatment.**

41. Plaintiff was not treated fairly and in a comparable way with other employees. She was replaced by a person much younger. (Exh I p 1 (b) and X p. 26 line 8 – 17) and younger employees were treated in a more "lenient" way. (Exh I and X (b) p. 38 line 16 -25 to p. 39 line 1 -17).

42. Employees who incurred in serious violations of the rules were not terminated (Exh I (b) and X(a), p 40 line 18 – 24). They were:

   a) Mr. Angel Suarez who obtained a loan using his savings as collateral, but he later withdrew all funds, leaving Defendant without the warranty. Twice he tried to make false deposits to his account. (Exh X (b) p. 42 line 18 – 25). Defendant gave him a reprimand letter.

   b) Mrs. Hilerio in a meeting told him that if it not were because **she liked him** she would had fire him. (Exh X (b) (p.43 – line 3 – 8)

   c) Joany Torres, tellers Supervisor, did not have balanced registers, was always on the phone, and was not discipline. (Exh. X (b) (43 – 23 to p. 44 line 10) (letters of reprimand are not discipline- PSUF 34 supra).

   d) José Lozada was teller's Supervisor, there was a complaint against him for harassment… and no discipline was imposed (Exh. X (b) (p. 45 line 7 – 12).

   e) Ms. Caez authorized a check payable in the name of her parents in the amount $102,320.69 and then issued two (2) manager's checks, and the check bounced. Defendant's funds were placed at peril. Ms. Caez was only suspended. (Exh X (p.

46 line 19 to p. 47 line 9 and XX). Depo Rodriguez (Exh XIV (a) (p 71 to 75 line 23).

f) Ms. Hilerio told Plaintiff that "it was sad" that Ms. Caez, after returning from her suspension, had resigned (Exh X (b)  (p. 47 – line 10 to 14).

g) There were many complaints against Carlos Vazquez and Defendant just transferred him to another branch, not disciplined. (Exh X (b) p. 47 line 21 – p. line 24).

h) Jessibel Torres- had several deficiencies, poor performance and insubordination but only received a reprimand letter. (Exh.X (b) (p. 49 line 3 - 25).

i) Mr. Lozada, who approved the Danmart transaction where funds were withdrawn from the credit line and manager's checks were issued, was not discipline in anyway. (Exh X (b) (p 80 line 6, 21 to 25) (p 81 line 1-20).

j)  Mr. Norberto Santos who carried out Mr. Tirado' s transactions was just reprimanded.

**Danmart Development Transaction**

43. Plaintiff knew  Mr. Damian Martinez as a Credit Union member for half of the years she had worked there. (Exh X (b) (p. 54 line 10 -24)

He had a commercial account, he had various accounts. He needed to make a withdrawal and informed Plaintiff that he was going to send his wife because he was going to be in a meeting with the CPA and he needed to make a payment to the Treasury Department, that day and needed manager's checks. (Exh IX and X (b)  (p 55  line 6 to 20).

23

44. Plaintiff requested him to write a letter authorizing his wife to make the transaction, which he did. (Exh IX, X (b) (p. 55 line 18 – 20) (Exh XVII)

45. Ms. Maria Ayala came around 1:00 pm to make the transaction. She spoke with her husband over the phone regarding the amounts of the checks. (Exh X (b) (p. 56- line 18 – 25). Exh VIII

46. The teller's **supervisor, Mr. Lozada, authorized** the transaction, (Exh. X (b) p. 80 line 6 and line 21 – 25). Plaintiff did not ordered Mr. Lozada to approved or process the transaction (Exh X (b) p 81 line 1 to 20).

47. The forms were filled and signed by Maria Ayala and delivered to the teller.   When the checks, were being prepared Mr. Damian Martinez arrived. He received the checks, reviewed them, took them and left.
     (Exh X (b)  (p. 57 line 1 to 25),  Exh VIII and IX.

48.  The information regarding the signature authorizing others to carry out transactions appears in the first page of the "Visuales System" (Exh X) page p. 82 line 13 – p. 83 line18)  and XVI (b).

49. Plaintiff's evaluation for years 2012, 2013 and 2014 were good or excellent. There was no mention of any disciplinary measures. Exh X (b) (p. 84 line 1 – 14) and (Exh II).

50. On June 26, 2014 Defendants granted Plaintiff a merit increase in consideration to her performance. (Exh III)

51. Defendants Code of Conduct and Progressive Discipline, of May 2013, provides in part:

        A-  The intention of the disciplinary measures is not to punish but of a corrective nature…

B- The **consistency and uniformity** in the enforcement of these norms and regulations are the **commanding principles** of the progressive discipline process, reason for which the same **will be enforce** upon all employees **without special considerations** … (Exh XII).

52. Ms. Matos, Vice-president of Finance and Human Resources, indicated that the cashier was the one that had to obtain the authorization (Exh XIII (p 59 lines 20 – 25). Exh V (job description).

53. Matos reviewed the "Visuales System" and Plaintiff Daumont **was authorized"** in Tirado's account. (Exh XIII (Page 67 lines 7 – 16).

54. Co-Defendant Hilerio admitted that the credit Union changed its computer program known as "Visuales" to Helvita (Exh XI pag49 line 4 to p 50 line 13),That she could not work with the "Visuales System" Because ….  "I do not know where things are supposed to be" (p 52 line 15 – 20).  "I could not trust the "Visuales System" (p 53 line 18 – 25).

55. As to authorize signatures in the "Visuales System", Co-Defendant testified, "we needed to start from scratch and do it all over again. When people would come, they would need to fill out this **new form** that they would sign, stating who was authorized signature, because **the information we had was not reliable**. Exh. XI (a) (p 57 line 1–11) (p 59 line 8 – 25).

56. After the new Helvita System was installed employees continued using the "Visuals System". (Exh XI (a) p 59 line 22 – 25).This caused communication problems. Exh XI (a) p 61 line 1 – 15)  (p 83 line 1 – 7)

57. Prior transactions carried out by Plaintiff on behalf of her husband were authorized. (Exh XI (a) p 93 line 9 – 14) XIX).

58. Defendants alleged that for Damart corporation transaction it a "corporate resolution" was needed. (Exh XIX (p110 line 3 – 9).

Co-Defendant Hilerio assured that "the document is on the file" XIX(p 112 line 1 – 14)

59. The only corporate resolution produced by Defendants in Danmart file was one **for a loan**. (Exh XI (a) (At pages 115 to 116). Co defendant admitted that **there was no need for a Corporate Resolution (XI (a)** (P 115 line 21 to p 116 line 2 – 9). Exh XI (b) p 8 line 12 – 23).

60. Co-defendant Hilario admitted that in personal accounts (like Mr. Tirado's ) the client could even "call and tell who ever is on the phone to make a transfer of $80.00 to a  checking account. "I can do it over the phone. Yes over the Phone" There was no need for a written document. ( Exh XI (a) p 114 line 1 – 5)

61. Co-Defendant Hilerio admitted that Mr. Norberto Santos had explained that it was he who failed to obtain the signature (approval) of the supervisor. (Exh XI (a) (p 119 line 16 – p 120 line 1)

62. Co-Defendant Hilerio explained that the Credit Union **did not** consider a reprimand letter a **disciplinary** action, they "are coaching", "only advise". Only when there is a punishment, like a work suspension, it is considered disciplinary. (Exh XI (b) (p 127 line 2 – 24).

See also, Ms. Lourdes Rodriguez Vice-president Finance and Human Resources testimony to the same effect (Exh XIV p 75 line 23)).

63. Ms. Lourdes Rodriguez, Defendants Vice-President of Finance and Human Resources, testified that she **did not** participate in the investigation of Damart transaction, and said matter was not discussed with Plaintiff. (Exh XIV) (p 36 line 3 -11; p 38 line 14 – 24 ).

Rodriguez did not interview teller Santos, nor Mr. Tirado, was not aware if Tirado had authorized his wife to carry out the transaction (Exh XIV) ( p 42 line 5 – 8) (p 46 line 13 – 23).

Plaintiff explained to her that she was an authorized person in Tirado's account. (Exh XIV (p49 line 19 – 24)

64. Ms. Rodriguez, VP of Human Resources, admitted that Ms. Dalitza Caez was a Supervisor, who

(a) approved cashing a check of $102,320.69

(b) Prepared two managers checks

(c) Without prior authorization

(d) The $102,230.69 check was returned for lack of funds

(e) The Credit Union's funds were imperiled

(f) The transaction was for the benefit of her parents

(g) It was a "structured transaction" prohibited by the Federal Bank Secretively Laws.

(h) The account against which the checks were cashed had no funds.

(i) Ms. Caez father did not have an account at the Credit Union.

(j) Weeks after the transaction the Credit Union had not recovered the funds.

(k) This Supervisor had prior incidents (three (3).

Ms. Caez was suspended from work for 30 days, not discharged.(Exh XIV (a)( p 74 line 20 to p 75 line 23) and Exh XX).

65. Defendant did not follow its Code of Conduct and Progressive Discipline (Exh XXII) pag. 8-9 (Part VII) " Section E: The facts that lead to an employee termination will be those which show **a reiterated pattern of conduct** or because of its nature **effects the well and normal operation of the credit union**".

**PLAINTIFF RESPECTFULLY SUBMITS this** statement of Uncontested Facts in support to its opposition to Defendants motion For Summary Judgement.

**IN SAN JUAN, PUERTO RICO, THIS 22t[h] DAY OF FEBRAURY, 2018.**

**s/godwin aldarondo girald**
**GODWINALDARONDO GIRALD**
**USDC- PR NO. 125205**
**ATTORNEYS FOR PLAINTIFF**
**ALDARONDO GIRALD LAW OFFICES**
**ESQUIRE BUILDING**
**VELA STREET, SUITE 701**
**SAN JUAN, P.R. 00918-3606**
**TEL. (787) 766-2876**
**FAX (787) 751-9832**
**aldarondo@prw.net**