IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

WANDA E. DAUMONT COLON

**PLAINTIFF**

VS.                                                            **Civil No.:** 15-3120 (CVR)

COOPERATIVA DE AHORRO Y CREDITO
DE CAGUAS; IRMA HILERIO ARROYO
AS OFFICER AND IN HER PERSONAL
CAPACITY

**DEFENDANTS**

## REPLY TO PLAINTIFF'S MOTION IN OPPOSITION TO DEFENDANTS MOTION FOR SUMMARY JUDGMENT

TO THE HONORABLE COURT:

COME NOW, defendants, Cooperativa de Ahorro y Credito de Caguas ("CaguasCoop"); and Irma Hilerio Arroyo ("Hilerio"), through their undersigned attorney, and very respectfully states and prays as follows:

## INTRODUCCTION

This reply memorandum is submitted in relation to Plaintiff's Motion in Opposition to Defendants' Motion for Summary Judgment. (Doc. 45)

**I.      Failure to Comply with FRCP 56D:**  First of all, plaintiff has not duly opposed our uncontroverted statement of facts.  Thus, said facts are to be deemed admitted.  Also, plaintiff has failed to establish (or create a fact issue) as to whether defendants' non-discriminatory articulated grounds to justify plaintiff's termination was a pretext to mask discrimination. Thus, summary judgment follows here as a matter of law.

*Feliciano de la Cruz v. El Conquistador Resort and Country Club*, 218 F.3d 1 (1st Cir. 2000), in an order denying panel rehearing held that the thinness of plaintiff's showing of

pretext, while enough to create a triable issue as to the falsity of company's reasons, failed to shed light into the true reasons.  Thus, the record was insufficient to bar summary judgment.

**II.  A.  <u>Plaintiff's Argument Of Disparate Treatment To Similarly Situated Employees Is Misplaced;</u>**
    **B.  <u>Plaintiff Has Failed To Establish That The Proffer Comparators Are Indeed Similarly Situated To Her On All Relevant Aspects;</u>**
    **C.  <u>The Comparators Evidence Submitted Cannot Be Admitted:</u>**

The arguments are intertwined, thus they are to be jointly discussed.

It had been held that it is fundamental that to make a comparison of a discriminative plaintiff's treatment to that of other not in her protected group, the plaintiff must show that the "comparables" are <u>similarly situated in all aspects</u>. *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (7th Cir. 1992); *Spath v. Hayes Wheels Intern. Indiana, Inc.*, 211 F.3d 392 (7th Cir. 2000)

If the plaintiff fails to establish that comparators are similarly situated employees no discriminatory intent can be inferred from the fact that other employees were treated differently. *Kaniff v. Allstate Ins. Co.*, 121 F.3d 258, 263 (7th Cir. 1997)

In determining whether employees are similarly situated, courts look to whether a prudent person, looking objectively at the incident, would think them roughly equivalent <u>and the protagonist similarly situated</u>. *Velez v. Thermo King de P.R. Inc.* 585 F.3d 441 (1st Cir. 2009); *Perkins v. Brigham & Women Hospital*, 78 F.3d 747 (1st Cir. 1996)

To successfully allege different treatment, a plaintiff must show that others similarly situated to her "in all relevant aspects" were treated differently by the employer. *Conward v. Cambridge School Comm.*, 171 F.3d 12, 20 (1st Cir. 1996); *Garcia v. Bristol Myers Squibb, Co.*, 535 F.3d 23 (1st Cir. 2008) ["Garcia has not demonstrated that she was treated differently from similarly situated male peers.  For one thing, she was the only person with the title of Senior Project Manager and she had different job responsibilities from the others in the department."]

In discrimination cases, a showing of similarly situated entails a showing that the two employees dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them. _Radue v. Kimberly Clark Corp._, 219 F.3d 612 (7th Cir. 2000)

Certainly, severity of infractions are most relevant in this analysis. _Byrd v. Ronayne_, 61 F.3d 1026 (1st Cir. 1999)

Different employment decisions, concerning different employees, made by different supervisors, are seldom sufficiently comparable to establish a prima facie case of discrimination for the simple reason that different supervisors may exercise their discretion differently.  These distinctions sufficiently account for any disparity in treatment, thereby preventing an inference of discrimination. _Radue, supra_ at p. 618.

Also, employees are dissimilar if one has previous job performance problems. _Radue, supra_ at p. 618.

As we shall demonstrate, plaintiff proffered evidence does not establish sufficient similarity with her in all required aspects to be considered as comparables to establish an inference of discrimination.  Thus, said evidence lacks any probative for the intended purpose and, cannot be considered at this summary judgment stage.  The comparators offered here do not closely resembled the plaintiff in respect to relevant facts and circumstances. _Conward_, supra, 171 F.3d at 20 ["in other words apples should be compared with apples."] See also, _Anderson v. Boston Sch. Comm._, 105 F.3d 762, 765 (1st Cir. 1997):

Let us analyze such proffered comparator _ad seriatim_:

Mr. Angel Suarez ("Suarez"):   His position was Collection Adjuster. (**Defendants' Exhibit A, Verified Statement of Lourdes Rodriguez**) (**Plaintiff's Exhibit X(B), p. 44**)(**Defendants' Second Statement of Additional Facts, DSSAF ¶ 1**)

There are <u>no</u> disciplinary actions on record from 2010 to present. (Id.)  Any disciplinary action must have been prior to the year 2010.  Defendant, Mrs. Irma Hilerio ("Hilerio") was not in CaguasCoop at that time. (**DSSAF ¶ 2**)

Suarez did not hold the same position as plaintiff (Branch Manager).  His supervisor was the Supervisor of the Collections Department, Mr. Nelson Millan.  Thus, a different supervisor than plaintiff. (**Defendants' Exhibit A, Verified Statement of Lourdes Rodriguez**)(**DSSAF ¶ 3**)

Plaintiff stated in her deposition that Suarez missed a lot of work. ((Plaintiff's Exhibit X(B) at p. 39, lines 20-25)  Also, that Suarez had a collateral loan against savings and withdrew all savings and left the loan without warranty. (Id.)  Lastly, that he was given a reprimand letter. Said letter was not submitted into the record. (Id.)   These infractions are not comparable to plaintiffs. (**DSSAF ¶ 4**)

In sum, plaintiff has failed to establish that Suarez can be compared to her.

Mrs. Joanny Torres ("Torres"):   Her position was Cashier Supervisor. (**Defendants' Exhibit A, Verified Statement of Lourdes Rodriguez**) (**Plaintiff's Exhibit 10(B) p. 44**)  Thus, plaintiff and Torres held quite different positions. (**DSSAF ¶ 5**)

The reprimands against Torres were issued by Mrs. Lourdes Rodriguez (VP Finances and Human Resources); Mr. Ramon Adorno (VP Operations); Mr. Carlos Vázquez (Branch Manager). (**Defendants' Exhibit A, Verified Statement of Lourdes Rodriguez**)  Neither was by the President, Mrs. Irma Hilerio, who terminated plaintiff. (**DSSAF ¶ 6**)

The objectable conduct indicated by plaintiff was that Torres "did not balance register; was always on the phone". Certainly, these infractions are not comparable to plaintiff's objectable conduct. (**DSSAF ¶ 7**)

In sum, plaintiff has failed to establish that Torres can be compared to her.

Mr. Norberto Santos ("Santos"):   Santos was a Cashier. (**Defendants' Exhibit A, Verified Statement of Lourdes Rodriguez**)  He was not a Branch Manager as plaintiff.  Thus, plaintiff and Santos held quite different positions. (**DSSAF ¶ 8**)

As alleged by plaintiff, Santos's objectable conduct was for doing a transaction without proper authorization.  He did not sign for another person as plaintiff did.  Thus, these infractions are not comparable to plaintiff's. (**DSSAF ¶ 9**)

In sum, plaintiff has failed to establish that Santos can be compared to her.

Mr. Jose Lozada ("Lozada"):  Lozada was a Cashiers Supervisor.  He was not a Branch Manager. (**Defendants' Exhibit A, Verified Statement of Lourdes Rodriguez**)  Thus, plaintiff and Lozada held quite different positions. (**DSSAF ¶ 10**)

Plaintiff posits that memo issued against Lozada for alleged conduct of harassment was by Mrs. Lourdes Rodríguez (VP Finances and Human Resources).  First, Lozada's infraction is not comparable to plaintiff's.  Second, the person who disciplined Lozada was Mrs. Lourdes Rodriguez, not the person who terminated plaintiff.  Also, related to Damart transaction plaintiff alleges that Lozada authorized the transaction.  Nevertheless, the evidence she points to establish this fact does not relates to the Damart transaction but as to the Tirado's transaction; specifically, as to <u>why</u> she did not ask him for authorization for the transaction.  At any rate, the transaction document shows that plaintiff signed it as authorizing agent. (**Defendants' Exhibit 13**) Yet, the infractions imputed to Lozadaare not comparable to plaintiff's. (**DSSAF ¶ 11**)

In sum, plaintiff has failed to establish that Lozada can be compared to her.

Mrs. Dalitza Caez ("Caez"):  She was a Cashiers Supervisor. (**Defendants' Exhibit A,** **Verified Statement of Lourdes Rodriguez**) (**DSSAF ¶ 12**)  Thus, a different position than plaintiff.  Nevertheless, due to her objectable conduct in question, Caez was subjected to a thirty (30) days suspension (of work and pay).  She was also, demoted to Cashier. (Id.)

Caez' violation was a transaction (related to her father) in conflict of interest.  It was a first violation.  Thus, plaintiff was treated <u>less</u> harsh than Caez for her first violation due to conflict of interest.  Plaintiff, was just reprimanded for a first violation concerning a transaction of her daughter of conflict of interest.  (**DSSAF ¶ 13**)

In a similar first offense situation, plaintiff was neither denoted not subjected to a thirty (30) days suspension of work and pay.

In sum, plaintiff has failed to establish that Caez can be compared to her.

Mr. Carlos Vazquez ("Vazquez"):  Plaintiff's allegation is that there were complaints against him.  Nevertheless, the complaints are not even articulated so that they can be compared to plaintiff's conduct.  Yet, plaintiff goes on to admit that it happened when Mr. Ramon Adorno was Interim Executive President, during that time, Hilerio was not then in CaguasCoop.  Hilerio's designation ended Adorno's interim designation. (**Defendants' Exhibit A, Verified** **Statement of Lourdes Rodriguez**) (**DSSAF ¶ 15**)

In sum, plaintiff has failed to establish that Vazquez can be compared to her.

Mrs. Jessybel Matos ("Matos"):  Her position when the alleged objectable conduct alleged by plaintiff took place was Cashier. (**Plaintiff's Exhibit 10B p. 43-50**) (**DSSAF ¶ 16**) Thus, a different position than plaintiff (Branch Manager).  Matos's supervisor was plaintiff (Branch Manager) and Mr. Carlos Vazquez (Branch Manager).(Id.)  Thus, Matos was not supervised by Hilerio, who terminated plaintiff.  The objectable conduct were cashier

differences, errors in deposits and alleged insubordination.    Thus, the infractions are not comparable to plaintiff's. (**DSSAF ¶ 17**)

In sum, plaintiff has failed to establish that Matos can be compared to her.

**III.**    **Plaintiff has failed to establish (or even create a triable issues of fact) to the effect that she was indeed an authorized signatory (co-debtor) in the credit line account of her consensual partner:**

CaguasCoop's position is quite straightforward:  plaintiff was not an authorized signatory in her consensual partner's credit line account and she signed under her consensual partner's name the withdrawal form from said account.

Plaintiff admitted to having written "Jose Tirado" in the signature of the member line (**Doc. 45-1 p. 6 ¶13**).  At first, Plaintiff tried to create a controversy as to whether she signed the document or not for Tirado.  Nevertheless, she goes on to admit on the one hand that "she wrote his [Tirado] name on the slip" and in the other hand that: "it is admitted that the 'signature' in the transaction slip was not of Mr. Tirado" (**Doc. 26 Defendants' SUF ¶ 34**).  If the signature was not Tirado's and plaintiff was the one who wrote "Jose Tirado" in the signature line of the form, then, inevitably (characterized as you may) she falsified the signature.  Plaintiff claims lack of criminal intent to walk away from having forged Tirado's signature.  Nevertheless, it was not Tirado who signed, plaintiff wrote it, and was not authorized by CaguasCoop to do so (she was not a co-debtor in the line of credit).  Whether she was or not authorized to do so by Tirado is irrelevant.    The issue is whether Tirado had affirmatively validated said authorization with CaguasCoop, and he did not.  Only said validation would allow plaintiff to move along with the transaction.  Yet, she still faces the problem that she signed for Tirado (and even an authorized person cannot do that.)  The authorized person can sign his/her own name and signature and not that of another person.

Mr. Tirado had his line of credit with CaguasCoop before his relationship with plaintiff started. (**Doc. 26 Defendants' SUF ¶¶ 14 and 15**)   Tirado and plaintiff never went to CaguasCoop to modify said credit line. (**Id.**)

Plaintiff never signed any documents at CaguasCoop in order to be a party responsible for Tirado's line of credit. (**Doc. 26 Defendants' SUF ¶15**)

Even after the transaction that led to plaintiff's termination, when the account documents were updated, no authorization was signed concerning the credit line account. (**Doc. 26 Defendants' SUF ¶17**)

Plaintiff's rebuttal arguments are predicated on the quite general and conclusory statement or assumption that Tirado had authorized the transaction in question in his line of credit, and if so, plaintiff was authorized to prepare and sign the required forms.

Nevertheless, said argument fails when it is established (without controversy to said effect) that plaintiff was not authorized to act on behalf of Tirado for all products and services provided by CaguasCoop. (**Defendants' SUF ¶ 17**)

The starting position here is that a line of credit is in the nature of a loan and only the debtor can draw from said line. (**Doc. 26 Defendants' SUF ¶ 27**)   Certainly, no evidence has been put forward by plaintiff to establish that she was a co-debtor in said line of credit.   The evidence is that she was not.

More so, when [admittedly] the line of credit in question predates Tirado/plaintiff's relationship and the same was never modified.

Simply put, authorization to do transactions in other accounts (checking/ savings) is not a subrogate to modify a line of credit and register plaintiff as a co-debtor.   Plaintiff's argument is that having been authorized to make transactions in Tirado's checking/savings accounts saves the day for her.   Yet, it does not.

Then, the circle closes when plaintiff writes "Jose Tirado" in the signature line for the withdrawal.  This action speaks loud and clear.  If plaintiff was indeed authorized to do the withdrawal from the line of credit she would have written (or signed) her name and not Tirado's.

If you are an authorized person you do not need to put (or sign) other name but yours. If you are an authorized person, you exercise your authorization with your very own name and signature, not those of the alleged authorizing parties.

**IV.      Defendants Have Not Changed The Explanation For The Termination**: Some courts have concluded that an employer's changing explanations is evidence of pretext. _Dominguez-Cruz v. Suttle Caribe, Inc._, 202 F.3d 424, 431-432 (1st Cir. 2000) ["when a company, at different times, gives different and arguably explanations, a jury may infer that the articulated reasons are pretextual."]

This may include differences between the reasons for the adverse action provided to the Equal Employment Opportunity Commission or state agency and those offered at trial or difference between the reasons given at the time of the decision and those presented at trial. Id., _Statter v. Wal-Mart Stores, Inc._, 195 F.3d 285, 286 (7th Cir. 1999); _Carlton v. Mystic Transp. Inc._, 202 F.3d 129, 136-137 (2000)

No instances of shifting explanations for the termination are present here.

The termination letter is quite clear. (**Defendants' Exhibit 23**)   Defendant have consistently stick to the grounds for termination articulated in said letter.

Plaintiff was terminated for the January 30, 2015 (Damart); the February 20, 2015 (Tirado) incidents; and other transactions (related to Tirado, too) discovered in the investigation that lead to the termination.   The fact that Hilerio, the decision maker, characterized what happened as a trust violation is not a change of explanation for the termination.   Hilerio's deposition testimony in context cannot be read or construed otherwise.  Let us see.

Hilerio was asked in deposition whether the instances that lead to plaintiff's termination caused any loss to CaguasCoop. (**Defendants' Exhibit 12, at p. 13**)  Then, Hilerio explains (making reference to the Damar's and Tirado's incidents), (**Defendants' Exhibit 12, at p. 14**) that there was no loss for any of the situations, it is in said context that she testified: "it was a trust factor".

["Q there was no loss in any of the two situations for the Coop?...A. No, it was a trust factor"] (**Defendants' Exhibit 12, at p. 14**)

Also, the fact that additional conflict of interests transactions by plaintiff have been brought up in this case for background information does not alter the ground for termination articulated by CaguasCoop.

Said instances still remain relevant and fair game in this action.  They show that plaintiff was not facing a first isolated instance of violation of company rules; show that plaintiff was indeed aware of the conflict of interests rules; had been coached as to said violations; and most of all, it was then advised that termination would follow if subsequent violations (as they did) take place.

For these prior violations plaintiff was disciplined, yet, admonished not to repeat the conduct.

The Answer to the Complaint, (**Doc. 8 ¶ 12**) quite clearly brought these prior events as background information.  These were not brought as additional grounds for termination nor as a change of explanation for the termination as plaintiff has unsuccessfully tried to characterize in a desperate effort to raise a change of explanation argument.

RESPECTFULLY SUBMITTED.

In San Juan, Puerto Rico, this 21st of March of 2018.

I HEREBY CERTIFY, that on this date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to counsel for the parties.

S/ Enrique J. Mendoza Mendez
Enrique J. Mendoza Mendez
USDC-PR 202804

**MENDOZA LAW OFFICES**
P.O. Box 9282
San Juan, P.R. 00908-0282
Tel. (787) 722-5522; 5530; 5540
Fax. (787) 723-7057
E-mail:  mendozalo@yahoo.com